IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BUILDING ERECTION SERVICES )
COMPANY, L.C. d/b/a BUILDING )
ERECTION SERVICES COMPANY )
OF MO, L.C., and ADVANCED )
BUILDING SYSTEMS, INC., )
 )
          **Plaintiffs,** )
 )
v. )
 ) Case No. 09-2104-CM
 )
AMERICAN BUILDINGS COMPANY )
D/B/A ARCHITECTURAL METAL )
 SYSTEMS, )
 )
          **Defendant.** )
 )

## MEMORANDUM AND ORDER

This is a negligence and breach of contract action brought by plaintiffs Building Erection Services Company ("BESCO") and Advanced Building Systems ("Advanced or ABS") against defendant American Buildings Company ("ABC"). Defendant ABC filed a counterclaim against plaintiffs BESCO and Advanced for payment of attorney's fees and expenses. The case is before this court on (1) Plaintiffs' Motion for Partial Dismissal with Regard to Count II of Defendant's Counterclaim (Doc. 29); (2) Plaintiffs' Motion for Partial Summary Judgment with Regard to Count II of Defendant's Counterclaim (Doc. 83); and (3) Defendant American Buildings Company's Motion for Summary Judgment (Doc. 98).

**I. Factual Background**

In April 2007, BESCO entered into a subcontract with J.E. Dunn Construction Company for a project known as the Chillicothe Reception and Diagnostic Center in Chillicothe, Missouri ("Project").

BESCO contracted with Advanced to supply the metal roofing components for the metal roofs of buildings in the Project. On May 18, 2007, Advanced entered into a Purchase Order Contract with ABC for the purchase of metal roof systems for the Project ("Contract").

Under paragraph 5 of the Contract, there is an interest charge of one and one-half percent against the outstanding balance monthly on all past due amounts. Paragraph 5 also requires the purchaser of goods and services to pay ABC's collection cost and reasonable attorney's fees incurred if ABC has to collect monies owed under the Contract. The Contract includes a 20-year WeatherSure L3 Weathertightness Warranty with 20-year Finish/Material Warranty. The Contract states that "the warranty quoted includes one inspection (up to three inspections available upon request). Third-party inspections standard; in-house inspections available upon request. The warranty will be issued only after inspection and approval by the authorized inspector." Paragraph 8 provides that

> Purchaser may purchase certain optional warranties for the benefit of Owner as may then be available and applicable to the AMS Building Systems or products purchased hereunder in accordance with the terms and provisions of the AMS Warranty Policy as regularly published and available for inspection on AMS Internet website, which may be modified from time to time, and in effect at the time of this agreement, the provisions of which are incorporated by reference (the "Warranty Policy").

On July 19, 2007, Thomas Farrar signed a Notification of Change Order ("Change Order") on behalf of Advanced, as its president. The Change Order was for the addition of foam thermal spacers to alleviate a concern about wind vibration noise in the metal roof panels.

In May 2008, Advanced effectively ceased doing business. On July 17, 2008, the State of Missouri issued its certificate of substantial completion. At that time, BESCO had completed all of its work on the Project. The only thing remaining to be done by BESCO/Advanced was the issuance of the ABC Warranty. The ABC warranties had not been released due to an ongoing payment dispute between Advanced and ABC. ABC had made it clear to Advanced that the warranty would not be

issued until the final payments were made for the metal roof systems. During the Project, ABC provided six inspections. It charged Advanced for the sixth inspection. Advanced paid for the sixth inspection, but disputed that it was required to do so.

On October 28, 2008, Advanced and BESCO entered into an Assignment of Contract ("Assignment"). The Assignment provides that "ABS does hereby sell, assign, transfer and set over unto BESCO all of its right, title and interest in and to [the Contract] entered into by and between ABS and [ABC]." It further provides that "ABS, by executing the Assignment, agrees that BESCO does not assume any of the obligations or duties of ABS under or with respect to the Contract unless and until BESCO shall have given to ABS written notice that it has affirmatively exercised its rights to complete or cause the completion of construction of the Project or assume the obligations or duties." Through the Assignment, Advanced also "irrevocably constitute[ed] and appoint[ed] BESCO as its attorney-in-fact to demand, receive, and enforce ABS's rights with respect to the Contract, to make payments under the Contract and give appropriate receipts, releases and satisfactions for and on behalf of and in the name of ABS or, at the option of BESCO in the name of BESCO, with the same force and effect as ABS could do if this Assignment had not been made."

On March 12, 2009, BESCO paid the account balance due to ABC for the Project because BESCO needed the warranties, which ABC would not issue until the account balance was paid. BESCO signed two ABC warranty agreements originally ordered by Advanced for the Project as the "Contractor."

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom

in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

**III. Discussion**

 *A. Plaintiffs' Motions to Dismiss and for Summary Judgment (Docs. 29 & 83)*

  Plaintiffs' motion to dismiss seeks dismissal of Count II of ABC's counterclaim on the same grounds as plaintiffs' motion for summary judgment. Plaintiffs' motion to dismiss relies on evidence outside of the pleadings, and thus, the court must convert plaintiffs' motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d) (When "matters outside the pleading are presented to and not excluded by the court, the court must treat the motion as one for summary judgment under Rule 56."). The court will therefore consider plaintiffs' motion to dismiss and motion for summary judgment together under Rule 56.

  In its counterclaim, ABC alleges that BESCO is liable under the Assignment[1] for the attorney's fees ABC incurred in seeking payment under the Contract. Plaintiffs contend that the court should dismiss ABC's claim for attorney's fees against BESCO because (1) the Assignment was non-assignable and (2) the Assignment did not assign the Contract liabilities to BESCO.

  Plaintiffs argue that the Contract was non-assignable, but their argument hinges on the fact that, at one time, ABC argued that it believed the Contract was not assignable, and thus, ABC should not now be allowed to rely on the Assignment. The court finds this argument meritless. Plaintiffs have not supported their argument with relevant case law, ABC is not asserting that the Assignment is invalid, and the Contract does not restrict assignments.

---

[1] In its response to plaintiffs' Motion to Dismiss, ABC argues that the Assignment is hearsay, but it appears to have abandoned this argument in its Summary Judgment briefing where it relies on the Assignment for its breach of contract claim. (Docs. 38 and 88.)

Next, the court considers what rights and obligations were assigned under the Assignment. Under the express language of the Assignment, Advanced transferred all of its right, title and interest in the Contract to BESCO, but retained its obligations under the Contract. The Assignment sets out the only way in which BESCO could assume Advanced's Contract obligations: "BESCO shall have given to Advanced written notice that it has affirmatively exercised its rights to complete or cause the completion of construction of the Project or assume the obligations or duties."

ABC argues that the Assignment is ambiguous because it does not indicate the nature of the notice or the manner by or to whom it should be given. ABC has not provided support for this argument and the court finds it unpersuasive. The clause specifically requires the notice to be given to Advanced, to be in writing, and to state that BESCO is affirmatively exercising its rights.

ABC also argues that, under the Assignment, BESCO assumes Advanced's Contract obligations when (1) BESCO provides Advanced with written notice <u>or</u> (2) BESCO, without written notice, affirmatively exercises its rights to "cause completion of the construction of the Project or assume the obligations or duties." Relying on this interpretation of the Assignment, ABC contends that BESCO assumed Advanced's Contract obligations through its conduct—paying the remaining purchase price, certifying remedial installation work, and executing the warranties.

ABC argues that its interpretation of the Assignment is correct because the relevant law[2] provides that an assignment of a contract for the sale of goods is also a delegation and assumption by

---

[2] In its motion, plaintiffs assert that Kansas law governs this action, but in their Reply brief, plaintiffs argue that Missouri law applies to this dispute. Defendant argues that its breach of contract claim is governed by Alabama law. The laws relied on by the parties regarding the Assignment are identical, thus the court need not determine which law applies.

-5-

the assignee of the duties of the assignor. Ala. Code § 7-2-210(5), which is identical to Kan. Stat. Ann. § 84-2-210(5)[3] and Mo. Rev. Stat. § 400.2-210(5)[4], provides:

> An assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract.

ABC's argument overlooks that these statutes expressly state that the assignor delegates its duties and the assignee accepts the duties "unless language or the circumstances (as in assignment for security) indicate the contrary." Here, the language of the Assignment specifically indicates the contrary by providing that "BESCO does not assume any of the obligations or duties of ABS under or with respect to the Contract unless and until BESCO shall have given to ABS written notice that it has affirmatively exercised its rights to complete or cause the completion of construction of the Project or assume the obligations or duties."

By arguing that BESCO can assume Advanced's obligation by its conduct, ABC fails to give the proper effect to the phrase "written notice." ABC's interpretation of the Assignment would create incomplete sentences and render the clause meaningless. If "written notice" operates as ABC suggests, the clause would be nonsensical. The reasonable interpretation is that "written notice" was required

---

[3] Kan. Stat. Ann. § 84-2-210(5) states, "An assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract."

[4] Mo. Rev. Stat. § 400.2-210 (5) states, "An assignment of 'the contract' or of 'all my rights under the contract' or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him or her to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract."

before BESCO exercised its rights to complete or caused the completion of construction of the Project or assumed the obligations or duties. This interpretation fits into the language and general intent of the Assignment. Advanced and BESCO intended to limit BESCO's exposure to liability, which is evidenced through the indemnification and attorney-in-fact clauses. The court finds ABC's argument that the Assignment language allows BESCO to assume Advanced's obligations under the Contract through mere conduct, rather than written notice, unpersuasive.

Through William Miller's affidavit, BESCO has presented testimony that it did not provide the written notice required to assume Advanced's obligations under the Contract. ABC has presented no evidence to the contrary. To the extent ABC argues that the warranties provided the written notice required under the Assignment, the court disagrees. BESCO signed two ABC warranty agreements originally ordered by Advanced for the Project as the "Contractor;" both warranties list Advanced as the Contractor. Through the warranties, BESCO warranted the workmanship of the roof system. The warranties do not address all of Advanced's obligations under Contract or state that BESCO is assuming all of Advanced's Contract obligations pursuant to the Assignment. The warranties are not written notice to Advanced that BESCO is affirmatively assuming Advanced's Contract obligations.

Although ABC states that "there are <u>at least</u> genuine issues of material fact as to assumption of the obligations of ABS under the [Contract], including the provisions for payment of attorneys fees for collection of the contract balance due," (doc. 88 at 14), ABC fails to set forth any disputed genuine issues of material fact. Based on the record before it, the court finds that BESCO did not assume Advanced's Contract obligations. Accordingly, plaintiffs' motion is granted. ABC's counterclaim against BESCO is dismissed.

***B. Defendant ABC's Motion for Summary Judgment (Doc. 98)***

In the Pretrial Order, plaintiffs set forth their claims of negligence and breach of contract jointly. However, in response to ABC's motion for summary judgment, plaintiffs concede that they are bringing separate claims against ABC. In count I, plaintiff BESCO alleges that ABC negligently designed, manufactured, and constructed roofing components used at the Project. In count II, plaintiff Advanced alleges that ABC breached the Contract.

### 1. **Plaintiff BESCO's Negligence Claims**

BESCO is asserting a negligence claim[5] against ABC for (1) negligently designing the roof system of Building 12 without two expansion joints; (2) negligently designing the ridge cap of Building 12 which causes crimping and buckling; and (3) negligently delaying its shipment of the expansion joint material to the Project which allegedly caused BESCO delay damages. ABC argues that (1) BESCO's negligence claims are barred by the economic loss doctrine; (2) the ridge cap claim is barred by BESCO's lack of evidence of negligence; and (3) the delay damage claim is barred by lack of evidence of damage.

The economic loss doctrine bars recovery of purely pecuniary losses in certain tort cases if the damage is only to the property at issue in the case. *In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004, 1015 (E.D. Mo. 2009). Missouri applies the doctrine to most strict liability cases and negligent cases where the alleged duty arises from a contract. *Id.* at 1016 (citing *Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor-Morley, Inc.*, 146 S.W.3d 411, 417−18 (Mo. Ct. App. 2004)) ("[W]here the duty allegedly breached arises from a contract, Missouri law will not allow a negligence or other tort claim."). When determining whether the doctrine applies, the court considers both the nature and the source of the duty alleged to have been violated and the plaintiff's rights in the property. *Id*.

---

[5] The parties agree that the negligence claims are governed by Missouri law.

"Missouri courts have rejected the economic loss doctrine, however, even in some cases where the parties had a contractual relationship, if the particular duty alleged to have been breached arose from the common law, as opposed to arising from the contract." *Id.* Missouri courts have held that the economic loss doctrine is not applicable when "an action [is] based on the negligent rendition of services by a professional rather than on the negligent manufacture or provision of a defective product." *Bryant v. Murray-Jones-Murray, Inc.*, 653 F. Supp. 1015, 1015 (E.D. Mo. 1985); *see also Bus. Men's Assurance Co. of Am. v. Graham*, 891 S.W.2d 438, 454 (Mo. Ct. App. 1994) (finding an architect had a duty to provide professional architectural services in a manner consistent with the skill and competence of other members of the profession in addition to duties arising from the contract between the parties). This exception only applies when defendants have been "held to a professional, rather than an ordinary, standard of care and [] have provided professional service to the plaintiff." *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 199 (8th Cir. 1995).

Relying on this exception, BESCO argues that the economic loss doctrine does not bar its claims because the claims are based on ABC's negligence when rendering professional services. Defendant attempts to limit this exception, arguing that a purchaser cannot reach back into the contractual chain to assert negligence claims against an upstream component manufacture. Although defendant cites cases from other jurisdictions that prohibit negligent claims that reach up the contractual ladder, it cites to no Missouri law for its proposition. In light of Missouri courts' application of the economic loss doctrine, the court finds that Missouri courts would allow negligence

claims where, as here, there is no direct contractual relationship between the parties[6] and the duty allegedly violated arises from professional services.[7]

To the extent plaintiff BESCO's negligence claims arise from a professional duty, the economic loss doctrine does not apply to the claims. Further, there are disputed issues of material fact related to these claims. BESCO's expert specifically states in his opinion that "it was an error in design to not include the expansion joints within Building 12" and "the design of Building 12 and other buildings did not allow for the ability of the metal roof structures to sustain natural thermal movement. This has resulted in numerous deformations throughout the structure." (Doc. 110, Ex. J at 1.) He also provides other opinions regarding alleged defects in the metal roof system. (*Id*. at 3.)

The economic loss doctrine does bar BESCO's claim for negligent delay of the expansion joint material. This claim does not appear to arise from a common-law duty, but from the Contract. The Pretrial Order lists the claim under count II, Advanced's breach of contract claim, "failing to timely deliver product so as to meet the deadlines on the project." (Pretrial Order at ¶ 5(a)(iii).) The only negligence claims alleged in the Pretrial Order are (1) negligence in design, manufacture or construction of roofing components (Pretrial Order at ¶ 6(b)) and (2) negligence in failing to properly design expansion joint (Pretrial Order at ¶ 6(c)). BESCO cannot now assert the claim as one for negligence when plaintiffs alleged the claim arises under the Contract in the Pretrial Order.

### 2. Plaintiff Advanced's Breach of Contract Claims

Advanced alleges ABC committed numerous breaches of contract including: (1) failing to pay one-half the cost of certain foam thermal spacers supplied for the Project; (2) charging interest at the

---

[6] As discussed above, Advanced did not assign all of its interest in the Contract to BESCO by executing the Assignment.
[7] BESCO must, of course, establish that ABC owed it a duty. *Hyde v. City of Columbia*, 637 S.W.2d 251, 257 (Mo. App. W.D. 1982) ("[E]ssential to liability for negligence is a relationship the law recognizes as the basis of a duty of care between the inflictor of injury and the person injured.")

contractual rate on amounts paid more than a year late; (3) charging Advanced for the sixth inspection of the installation of the roof system; (4) failing to give Advanced an additional $3,712.45 credit for certain structural members removed from the roof; and (5) improperly charging Advanced for additional downspouts and the amounts on invoice numbers 333393 and 330320.[8]

ABC argues that Advanced cannot bring its breach of contract claims because it assigned all of its interest in the Contract to BESCO through the Assignment. As discussed above, the court rejects this argument. ABC also argues that Advanced's breach of contract claims are barred (1) by the terms of the Purchase Order and (2) because payment was made for the items at issue.[9]

### *(1) Foam Thermal Spacers*

Advanced seeks damages in the amount of $2,769.25 for one-half of the cost of foam thermal spacers. The thermal spacers were not a part of the original Contract. The parties entered into the Change Order regarding the thermal spacers. The Change Order sets out the cost of the change, $5,276.00, but does not explicitly indicate who is to pay for the change.

Advanced argues that ABC, through its salesman David Reed, agreed to pay for one-half of the cost of the thermal spacers before Mr. Farrar signed the Change Order. ABC argues that the parol evidence rule prohibits the court from considering whether Mr. Reed told Advanced that ABC would cover one-half of the cost prior to the Change Order. Parol evidence of prior or contemporaneous verbal agreements is inadmissible where its effect is to change, or defeat, the legal operation of a

---

[8] Advanced originally alleged that ABC breach the contract by failing to provide two expansion joints in the roof system of Building 12; however, in its summary judgment briefing, plaintiffs state that the claims related to the two expansion joints are BESCO's negligence claims, not Advanced's contract claims.

[9] ABC did not preserve the defense of payment in the pretrial order. ABC has filed a Motion for Leave to Amend its Answer and the Pretrial Order (Doc. #97) with the Affirmative Defense of Payment (Doc. 101), which is currently pending before Magistrate Judge Waxse. The court will not consider ABC's payment defense at this time. ABC may, however, file an appropriate motion raising the defense if the pretrial order is amended to include it.

written instrument which is clear on its face. *Walton v. Beverly Enters.-Ala., Inc.*, 4 So.3d 537, 542 (Ala. Civ. App. 2008). But parol or other extrinsic evidence is admissible to explain or clarify patent or latent ambiguities. *Id.* at 543. Here, the Change Order is ambiguous. It does not say that Advanced is agreeing to pay the $5,276.00. It merely sets out the cost of the change. Further, the Contract does not explain or contemplate change orders. Based on the ambiguity of the written documents, it is possible that the parties discussed sharing the expense of the Change Order. Accordingly, the court finds that parol evidence is admissible to determine the parties' intent.

The facts regarding whether Mr. Reed agreed to share the cost of the thermal spacers and whether Mr. Reed had authority to enter into such an agreement on behalf of ABC are in dispute. Thus, summary judgment on this claim is not warranted.

*(2) Interest*

Under the terms of the Contract, past due amounts were subject to an interest charge of one and one-half percent against the outstanding balance monthly. Advanced seeks money it paid to ABC as interest on the Contract, arguing the interest was not due under the Contract because (1) ABC had not provided the warranties for the project and (2) the outstanding balance on which the interest was charged was incorrect.[10] ABC argues the interest was due under the Contract because the warranties were not to be provided to Advanced until the purchase was paid in full. To support its argument, ABC argues that although the Contract is silent as to when the warranties were to be provided, Mr. Farrar knew from previous dealings with ABC that the warranties would not be provided until the purchase price was paid in full. ABC further argues that Paragraph 8 of the Contract incorporates ABC's Warranty Policy as posted on its website. The court finds ABC's argument unpersuasive. First, nothing in the record indicates that the Contract was to be governed by the parties' previous

---

[10] Advanced asserts that it paid the interest in order to get the warranties, but disputes that ABC was entitled to the interest.

dealings. Second, Paragraph 8 deals with additional warranties that can be purchased. Third, ABC has not provided the court with a copy of the Warranty Policy it alleges is applicable to the Project, thus the court cannot determine whether Advanced's payment was due prior to receiving the warranties. Defendant has not shown that it is entitled to judgment as a matter of law on this claim.

### *(3) Sixth Installation Inspection*

Advanced seeks reimbursement of $4,531.81 for the inspection fee it paid for the sixth inspection of the roof system, arguing that under the Contract ABC agreed to provide up to three inspections per building—a total of 30 inspections. ABC argues that this claim fails because the Contract only provides one inspection, and up to three if requested, for the entire Project.

When interpreting a contract, the court gives the words of the agreement their ordinary meaning. *Penick v. Most Worshipful Prince Hall Grand Lodge F & AM*, No. 1071530, 2010 WL 996538, at *9 (Ala. March 19, 2010). When the terms of an agreement are plain and unambiguous, the construction of the contract and its legal effect are questions of law for the court. *Id*. "However, if the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury." *Id*. (quotations and citations omitted).

Here, the Contract states that "the warranty quoted includes one inspection (up to three inspections available upon request)." The Contract is silent as to whether this provision contemplates inspections per building or per project. The provision allows for multiple meanings. Presumably each building is inspected before a warranty is issued. If so, the provision would seem to apply per building, but the Contract does not specifically say per building. Additionally, the parties' actions do not support only one interpretation of the provision—ABC provided five inspections before charging Advanced for the sixth inspection, which Advanced paid (although perhaps involuntary). Based on the

-13-

record and the facts presented, the court finds that the contract is ambiguous, and thus, summary judgment on this issue is inappropriate.

### *(4) Credit For Certain Structural Members Removed From The Roof*

Advanced seeks to recover $3,712.45 for "red iron" components that were removed from the roof design of Building 12. The parties dispute the facts relevant to this claim. Advanced asserts that Mr. Reed promised a $14,000 credit for the modification. ABC argues that it did not promise a $14,000 credit and that it properly deducted the cost of the modification from any credit due Advanced. Because there are material factual issues in dispute, the court cannot grant summary judgment on this claim.

### *(5) Additional Downspouts And Gutters Purchased*

Advanced seeks to recover $703.25 for downspouts and $2,558.56 and $710.10 for wrongful payment of invoice numbers 333393 and 330320, respectively. Again, the parties dispute the relevant facts regarding this claim. Based on the record before the court, defendant has not established that it is entitled to judgment as a matter of law.

For the reasons discussed above, defendant's motion for summary judgment is denied.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Dismissal with Regard to Count II of Defendant's Counterclaim (Doc. 29) and Plaintiff's Motion for Partial Summary Judgment with Regard to Count II of Defendant's Counterclaim (Doc. 83) are granted. Defendant ABC's counterclaim against BESCO is dismissed.

**IT IS FURTHER ORDERED** that Defendant American Buildings Company's Motion for Summary Judgment (Doc. 98) is granted in part and denied in part.

Dated this 29th day of June 2010, at Kansas City, Kansas.

        s/ Carlos Murguia
        **CARLOS MURGUIA**
        **United States District Judge**